UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In Re:

ROSS R. CALIGURI,   Case No. 09-75657-ast
                    Chapter 7

                Debtor.
-------------------------------------------------------x

**APPEARANCES:**

Jeffrey Herzberg, Esq.
Zinker & Herzberg, LLP
278 East Main Street, Suite C
Smithtown, New York 11787
*Attorneys for Ross R. Caliguri*

Michael L. Moskowitz, Esq.
Weltman & Moskowitz, LLP
270 Madison Avenue, Suite 1400
New York, New York 10016-0601
*Attorneys for Pentagon Federal Credit Union*

## **MEMORANDUM OPINION DENYING MOTION TO AVOID LIEN**

### **Issues Before the Court and Summary of Ruling**

Pending before the Court is the Motion of Debtor seeking to avoid a consensual second priority mortgage lien under Section 506(d) of the Bankruptcy Code, 11 U.S.C. § 506(d) (the "Motion"). For the reasons herein, this Court denies the Motion.

### **Jurisdiction**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O), and 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## Procedural History

On July 31, 2009 (the "Petition Date"), Debtor, Ross R. Caliguri ("Debtor") filed a voluntary petition for relief (the "Petition") under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code"). [dkt item 1]  This case was filed as a no asset case.

Along with his Petition, Debtor filed, *inter alia*, his Schedules ("Schedules") and Statement of Financial Affairs ("SOFA").  The Schedules disclose that Debtor is the owner of and resides at the property located at 377 Chase Drive, Bridgehampton, New York 11932 (the "Property").  The Schedules also disclose that the Property serves as collateral for two different mortgage debts: a first mortgage lien held by JPMorgan Chase Bank, National Association successor-by-merger to Washington Mutual Bank f/k/a Washington Mutual Bank FA ("Chase"), and a second mortgage lien held by Pentagon Federal Credit Union ("Pentagon").  Debtor valued his home at $1.65 million, against which he listed mortgage debts of $1,284,000.00 to Chase and $296,100.00 to Pentagon.

On August 5, 2009, the Clerk of this Court issued a notice of the commencement of this case, which, *inter alia*, notified creditors not to file claims unless subsequently notified to do so. [dkt item 10]  Thus, no bar date for the filing of claims was set.

On November 10, 2009, this Court entered an Order granting Debtor a discharge. [dkt item 39]

On December 10, 2009, the Chapter 7 Trustee (the "Trustee") filed a "No Asset Report," advising parties-in-interest that the Trustee had neither received any property to distribute, nor paid any money on account of this estate, and that, after a diligent inquiry, he had determined that no property was available for distribution from the estate over and above property which

Debtor was entitled to exempt.[1]  The Trustee further certified, pursuant to Rule 5009 of the Federal Rules of Bankruptcy Procedure, that this estate has been fully administered.  This bankruptcy case remains open only because one party commenced an adversary proceeding against Debtor seeking a determination that an alleged debt is nondischargeable.

## The Motions for Relief from the Stay

On September 17, 2009, Pentagon filed a motion for relief from the automatic stay, seeking authority to continue a mortgage foreclosure action against Debtor and the Property which Pentagon had commenced prior to the Petition Date (the "Stay Relief Motion"). [dkt item 20]  In its Stay Relief Motion, Pentagon alleged the value of the Property was $1.25 million, and that Debtor had no equity above the first lien debt.  Pentagon asserted it was entitled to stay relief under both Bankruptcy Code Section 362(d)(1) and (d)(2). [dkt item 20-1]

A hearing on the Stay Relief Motion was scheduled and noticed for October 8, 2009.  Debtor did not file any response to the Stay Relief Motion, nor did Debtor appear at the scheduled hearing.  By Order dated October 13, 2009 (the "Stay Order"), Pentagon was granted relief from the automatic stay to exercise its remedies against the Property. [dkt item 27]  In the Stay Order, this Court, *inter alia*, determined that Debtor had no equity in the Property, terminated the stay under both Section 362(d)(1) and (d)(2), and authorized Pentagon to "take any and all action under applicable state law to exercise its remedies against the" Property. [dkt item 27]

On October 15, 2009, Chase filed a motion for relief from the automatic stay, seeking authority to continue its prepetition foreclosure action against Debtor and the Property (the

---

[1] In the Eastern District of New York, chapter 7 trustees may electronically upload a no asset report on the Court's CM/ECF system; this upload is not assigned a docket event number, but appears in full text format in the Court's official CM/ECF records.

"Chase Motion"). [dkt item 28]  A hearing on the Chase Motion was scheduled and noticed for November 24, 2009.  Debtor did not file any response to the Chase Motion, nor did Debtor appear at the hearing.  On November 30, 2009, an Order was entered granting Chase relief from the automatic stay to exercise any and all of its remedies against the Property. [dkt item 42]

## Background of the Present Motion

On December 11, 2009, Debtor filed the present Motion. [dkt item 45]  Pentagon filed an objection to the Motion on January 7, 2010. [dkt item 48]   A hearing on the Motion was held on January 12, 2010 (the "Hearing").  In the Motion, Debtor argues that the Pentagon mortgage debt is wholly undersecured and that, as such, any lien which secures the mortgage should be avoided pursuant to § 506(d).

## Analysis

*A Chapter 7 Debtor May Not Avoid a Wholly Undersecured Lien in a Chapter 7 Case*

In support of his Motion, Debtor relies on a statutory interpretation of § 506(d), and the decision in *In re Lavelle*, No. 09-72389-478, 2009 WL 4043089 (Bankr. E.D.N.Y. 2009).  In *Lavelle*, the Court determined that a chapter 7 debtor may avoid a subordinate mortgage lien if that lien is wholly unsecured, based on an analysis of Section 506.[2]  *Id.* at *5-6.

While this Motion was under consideration, Judge Grossman of this Court issued an opinion in *In re Pomilio. See Pomilio v. MERS, et al. (In re Pomilio)*, — B.R.—, No. 809-76399-reg, 2010 WL 681300 (Bankr. E.D.N.Y. 2010).  In *Pomilio*, Judge Grossman determined that a

---

[2]  For terminology purposes, this Court refers to a consensual mortgage lien which is not supported by any value in the collateral as wholly undersecured; other courts may use the terminology wholly unsecured.  By virtue of §506(a), a lien may be wholly undersecured or wholly unsecured if the debts secured by liens with priority over the subject lien exceed the value of the collateral.  Section 506(a) provides, *inter alia*, that a claim is a secured claim if there is a grant or creation of a lien, and the value of the secured claim is limited to "the extent of the value of the secured creditor's interest in the estate's interest in such property."  11 U.S.C. § 506(a).

lien may not be avoided[3] by a chapter 7 debtor even if the party benefitted by such lien would not hold an allowed secured claim for § 506 purposes, citing the United States Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), and several circuit level and lower court decisions thereafter. *Id.* This Court adopts the analysis in *Pomilio* and concludes that a chapter 7 debtor may not avoid the lien of a wholly undersecured, consensual mortgage lien holder.

In *Pomilio,* the Court began its analysis with Bankruptcy Code Sections 506(a) and (d),[4] and the Supreme Court's holding in *Dewsnup* that a chapter 7 debtor cannot bifurcate a secured creditor's claim into a secured claim to the extent of the fair market value of the subject real property and an unsecured claim for the remaining balance. This process, referred to "stripping down" the secured creditor's claim, was held simply to not be available to a chapter 7 debtor. *Pomilio,* No. 809-76399-reg, 2010 WL 681300 at *4 (citing *Dewsnup*, 502 U.S. at 417).

Post-*Dewsnup* courts have generally interpreted *Dewsnup* to prohibit chapter 7 debtors from avoiding (stripping off) liens which are wholly undersecured for the same reasons that a chapter 7 debtor may not reduce a secured mortgage claim to the fair market value of the property (stripping down). *See id.; see also generally In re Grano,* 422 B.R. 401 (Bankr. W.D.N.Y. 2010). Such a reading or extension of *Dewsnup* is a proper and consistent application of Section 506, and not inconsistent with the Second Circuit's decision in *In re Pond*, 252 F.3d 122 (2d Cir. 2001). *Grano,* 422 B.R. at 403.

---

[3] Again, for terminology clarification, some courts refer to lien avoidance in these circumstances as lien stripping or as voiding a lien.

[4] Bankruptcy Code § 506(d) provides:
> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless— (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

In *Pond*, the Second Circuit held that a chapter 13 debtor may avoid (strip off) a wholly undersecured second mortgage lien against the debtor's residence. *Pond*, 252 F.3d at 127. If there is no collateral value to support the inferior mortgage lien, the claim is not secured for Section 506(a) purposes, and the lien is, therefore, wholly undersecured. *Id.* at 126. As such, the mortgagee is not the holder of a claim secured by a security interest in the debtor's principal residence, and, therefore, its rights are not protected under the anti-modification provision of Section 1322(b)(2)[5]. *Id.* at 127.

The claims adjudication process, in part, differentiates the chapter 7 and chapter 13 implications of Section 506(a) and (d). "Without the occurrence of a prior allowance process, a lien cannot be avoided under [§ 506(d)]." *Pomilio*, 2010 WL 681300 at *6 (internal footnote omitted). Because this is a no asset case, creditors were instructed not to file claims. As such, the claims adjudicative process would not be invoked because claims did not need to be filed, and the allowance or disallowance of claims will not affect creditor distributions. Even if Pentagon had filed a claim, which it did not, and Debtor objected, a determination of the extent to which the Pentagon mortgage is a secured claim would not be a meaningful controversy for this Court to determine because there are no assets available to be distributed to creditors. Thus, Section 506 is not a viable means of avoiding (stripping off) a wholly undersecured lien in a no asset case.

Further, as the *Pomilio* court stated, and as the Supreme Court noted in *Dewsnup*, in a Chapter 7 case, "a bankruptcy discharge extinguishes only one mode of enforcing a claim— namely, an action against the debtor *in personam* while leaving intact another—namely, an

---

[5] Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).

action against the debtor *in rem.*'" *Id*. (quoting *Dewsnup*, 502 U.S. at 418). A post-discharge mortgage foreclosure action may allow a mortgagee to exercise its rights to sell the property in accordance with applicable state law, but no deficiency can be sought against or collected from the debtor. Allowing a chapter 7 debtor to avoid the mortgage lien would result in extinguishing the creditor's *in rem* rights against the property. This would be contrary to a primary purpose of Chapter 7, which is to give the debtor a fresh start, but not a head start. *See id.*

Similarly, Section 522(f) does not provide a viable statutory basis to avoid a wholly undersecured lien. "Section 522(f) specifically confers upon Chapter 7 debtors the authority to avoid . . . the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under" Section 522(b). *Id.* at *5 (citing 11 U.S.C. § 522(f)). Section 522(f) confers standing upon chapter 7 debtors that is limited to avoidance of nonconsensual liens which impair the debtor's applicable exemption, and, as such, do not apply to consensual mortgage liens. *Id.*

*This Case Is Factually Distinguished From* Lavelle

The facts of this case also differ from those in *Lavelle*. The evidence before this Court demonstrates that the Pentagon lien may be partially secured and partially undersecured, as opposed to wholly unsecured. Although Pentagon may have made a contrary allegation in its Stay Relief Motion, in its response to the present Motion, Pentagon noted that Chase may actually have been owed $1,088,026.36 as of the Petition Date, which is substantially less than Pentagon previously believed. Using the same $1.25 million appraisal used to support the Pentagon Stay Motion, Pentagon would hold a partially undersecured mortgage. In that circumstance, lien stripping would not be available under *Lavelle,* which limited its holding to

Memorandum Opinion - p. 7

avoiding a lien held by a wholly undersecured creditor. *See Lavelle*, No. 09-72389-478, 2009 WL 4043089 at *4 (acknowledging *Dewsnup*'s holding "that a chapter 7 debtor may not 'strip down' a first mortgage to the fair market value of the property.").

Further, the Motion is not procedurally correct. Debtor acknowledged at the Hearing that a valuation issue would have to be determined through an adversary proceeding, and not in a contested matter. *Compare* FED. R. BANK. P. 7001(2)(providing that an adversary proceeding includes "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d).") *with* FED. R. BANK. P. 4003(d)(allowing a debtor to proceed by contested matter to seek to avoid a lien which impairs the debtor's claim of exemption in certain circumstances, pursuant to Section 522(f)). As noted, Section 522(f) is not available here, and therefore an adversary proceeding would be the proper vehicle, if the type of relief sought by Debtor were lawfully available.

Finally, this Court is concerned about the potential collateral attack implications of allowing Debtor to even seek to avoid Pentagon's lien. By entering the Stay Order and granting stay relief, this Court has already determined that Pentagon has a colorable claim of a lien against the Property, and the amount of all liens against the Property exceed the value of the Property. "If the Bank has no lien then relief from the stay is unwarranted because the Bank is entitled to no more than is any other general, unsecured creditor." *In re Pandeff*, 201 B.R. 865, 870 (Bankr. S.D.N.Y. 1996).

In *Lavelle*, the request to avoid the lien was brought in opposition to a motion for relief from stay. *Lavelle*, No. 09-72389-478, 2009 WL 4043089 at *1. Here, Debtor did not oppose stay relief, and stay relief was granted by an order which is now final. Debtor, however, would

now seek to avoid the Pentagon lien to prevent Pentagon from obtaining foreclosure of its mortgage lien through the state court foreclosure process. Such an approach may constitute a collateral attack on the Stay Order.

## Summary of Ruling

The Motion should be and is hereby denied. An order consistent herewith shall issue.

**Dated: March 16, 2010**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**

Memorandum Opinion - p. 9